UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JADE A. BALOGH,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:25-CV-207-CCB-ALT |

**OPINION AND ORDER**

Before the Court is Plaintiff Jade Balogh's appeal on behalf of Sonia Renee Harrison of the Social Security Administration's June 2, 2020, decision denying Ms. Harrison's claim. (ECF 1). In that decision, an Administrative Law Judge ("ALJ") of the Social Security Administration denied Ms. Harrison's claim for disability insurance benefits ("DIB"). Now Ms. Balogh seeks remand of that decision. Ms. Balogh's request is granted. The ALJ's opinion is reversed and remanded for the reasons below.

**ANALYSIS**

**A. Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means

"evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also* *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. But that review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the Court that he "considered the important evidence" and allow the Court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**B. Procedural Background**

Ms. Harrison first applied for DIB on September 25, 2018. (R. 21). This claim was denied initially, and upon reconsideration. (*Id.*) She then filed a written request for a hearing. This request was granted, and a telephonic hearing was held before an ALJ on May 15, 2020. (*Id.*) On June 2, 2020, the ALJ issued an unfavorable decision. (*Id.*) Ms. Harrison challenged that decision in this Court, and her case was remanded to the Social Security Administration on March 10, 2022. (R. 860).

Ms. Harrison passed away on April 26, 2022. (R. 884). Her daughter, Ms. Balogh, was substituted for Ms. Harrison, (R. 971), and a second telephonic hearing before an ALJ was held on September 21, 2023, (R. 739). This hearing also resulted in an unfavorable decision. (R. 736). Ms. Balogh appealed this decision to the Appeals Council, and her appeal was denied. (R. 729). She now appeals to this Court.

**C. The ALJ's Decision**

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. *See* 42 U.S.C.

§ 423(d)(2)(A). If a claimant's application is denied initially and upon reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1).

When deciding whether to grant or deny benefits, an ALJ conducts a five-step inquiry: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she has the residual functional capacity to perform her past relevant work, and (5) whether the claimant is capable of performing any work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a); 404.1560(c)(2); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). An answer in the affirmative in steps one through four stops the inquiry and the claimant is found to be not disabled. If steps one through four are answered in the negative, the ALJ proceeds to step five, where the burden rests on the Commissioner. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

Here, at step one, the ALJ found that Ms. Harrison did not engage in substantial gainful activity between her alleged onset date of April 25, 2017, through December 31, 2019, the date she was last insured. (R. 742). At step two, the ALJ found that Ms. Harrison had the following nonsevere impairments through her date last insured: GERD, hyperlipidemia, and recurrent UTI. (*Id.*) She also found that Ms. Harrison had the following severe impairments: rheumatoid arthritis, obesity, depression, anxiety, ADHD, OCD, PTSD, and intermittent explosive disorder. (R. 743).

At step three, the ALJ determined that Ms. Harrison did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 744). At step four, she determined that Ms. Harrison

> had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except no climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional kneeling and crawling; frequent balancing as defined in the SCO of the DOT, stooping, and crouching; fingering and handling, frequently bilaterally; no exposure to extreme heat or extreme cold; understand, remember, and carry out simple instructions and tasks; and frequent interaction with coworkers, supervisors, and the public.

(R. 748). The ALJ found that Ms. Harrison was unable to perform any past relevant work through her date last insured. (R. 750).

At step five, the ALJ found that, considering Ms. Harrison's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that she could perform. (R. 751). Based on these findings, the ALJ determined that Ms. Harrison was not disabled as defined in the Social Security Act during the relevant period. (*Id.*)

**D. Issues on Appeal**

Ms. Balogh argues that the ALJ's decision should be reversed because the ALJ did not support with substantial evidence her finding that a significant number of jobs existed in the national economy that Ms. Harrison could perform. Ms. Balogh raises other arguments as well, but because this issue is dispositive, the Court need not address them. *See James A. v. Saul*, 471 F. Supp. 3d 856, 858 (N.D. Ind. 2020).

At step 5, the ALJ noted that the vocational expert highlighted three representative jobs Ms. Harrison's RFC would permit her to perform. The ALJ included the vocational expert's approximation of the number of those jobs that existed in the national economy:

> Inspector, DOT# 669.687-014, SVP 2, with approximately 9,000 jobs in the national economy; Assembler, DOT# 739.687-066, SVP 2, with approximately 6,000 jobs in the national economy, and Touch Up Screener, DOT# 726.684-110, SVP 2, with approximately 9,000 jobs in the national economy.

(R. 752). Together, the number of representative jobs total 24,000.[1]

Ms. Balogh's argument on this point is not complicated: she contends that the Commissioner failed to meet his step five burden because 24,000 jobs is not a significant number of jobs. In support, she cites a string of district court cases from this circuit finding that job numbers at or near 24,000 were not significant. *See, e.g.*, *Gass v. Kijakazi*, 1:19-CV-404, 2021 WL 5446734, at *8 (N.D. Ind. Nov. 22, 2021) (finding 24,000 jobs insufficient to establish that a significant number of jobs exist in the national economy); *James A. v. Saul*, 471 F. Supp. 3d 856, 859 (N.D. Ind. 2020) (finding that "14,500 is far below any national number of jobs that the Seventh Circuit Court of Appeals has determined to be significant").

The Commissioner offers two counterarguments. First, he notes that Ms. Balogh does not cite any controlling authority holding that 24,000 jobs is inadequate, and

[1] The ALJ notes that "the vocational expert stated there were two additional jobs, at 9,000 positions and 6,000, respectively, that were not included in the representative sample." (R. 752). Later, though, the ALJ "finds that the representative numbers are significant," so the Court takes the ALJ to have found that the 24,000 jobs reflected in the three representative roles were significant. (*Id.*)

emphasizes that "the ALJ is granted discretion to determine what constitutes a 'significant' number of jobs on a case-by-case basis." *Milhem v. Kijakazi*, 52 F.4th 688, 694 (7th Cir. 2022). Though the Commissioner is right that "[s]ubstantial evidence" sufficient to affirm the ALJ's decision "is not a high threshold," *id.*, the ALJ must nonetheless support her decision with at least some "evidence that demonstrates that . . . work [the claimant's RFC permits them to do] exists in significant numbers in the national economy," 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2). Ms. Balogh did not need to cite controlling authority that 24,000 jobs is not a significant number for this Court to consider whether the ALJ supported her decision with "evidence a reasonable person would accept as adequate." *Milhem*, 52 F.4th at 696 (quoting *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012)). At step five, the burden rests on the Commissioner to show that 24,000 jobs in the national economy is a significant number of jobs.

Next, the Commissioner argues that the Seventh Circuit has already effectively held that 10,000 jobs is a significant number of jobs, so this Court must accept that 24,000 is also a significant number. In support, the Commissioner points again to *Milhem*. In that case, the Seventh Circuit acknowledged that "[o]ur circuit's case law does not provide a clear baseline for how many jobs are needed" to reach the threshold of significance, but held that 89,000 jobs cleared that bar. *Id.* at 696. At the core of the Commissioner's argument is the conclusion of *Milhem*, where the Seventh Circuit states that "[t]his ruling is also in accord with the numbers of national jobs held to be significant by other circuits," and cites in support cases from the Sixth, Ninth, and Eighth Circuits. Of the four cases cited, only one Eighth Circuit case holds a number less

than 24,000 to be significant: *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997), which concludes that 10,000 jobs in the national economy is a significant number. The Commissioner accepts that *Milhem* does not itself find 10,000 jobs to be significant, but argues "*Johnson* shows, at a minimum, that relying on only 10,000 jobs is not unreasonable." (ECF 17 at 8).

But this Court does not sit within the Eighth Circuit. Nothing in *Milhem*'s note that its holding was "in accord" with the law of other circuits suggests the Seventh Circuit meant to adopt the law of all circuits cited as its own. Thus, *Johnson* is only persuasive authority to the Court, and its persuasiveness rises and falls based on its applicability to this case.[2] Mindful of the Seventh Circuit's caution that "reviewing courts should be attentive to the difference between regional and national job numbers in this discussion," *Milhem*, 52 F.4th at 696, the Court notes that the 10,000-job figure in *Johnson* is only part of the evidence in that case. The *Johnson* ALJ also found that 200 jobs the claimant could perform existed in Iowa. 108 F.3d at 180. The ALJ made no such regional finding here. And, as Ms. Balogh notes, no other case cited in this portion of *Milhem* finds a number at or below 24,000 jobs to be significant.

The Court is not persuaded that the Seventh Circuit's inclusion of *Johnson* in a string citation is enough to establish the reasonableness of 10,000 jobs as a lower end limit. In fact, it seems that the weight of authority, both outside this circuit and within,

[2] The Court appreciates the Commissioner's frank acknowledgment that the lowest number of jobs the Seventh Circuit has found significant is 30,000. (ECF 17 at 7 (citing *DuCharme v. Kijakazi*, No. 21-2204, 2022 WL 3287974, at *3 (7th Cir. Aug. 11, 2022))).

supports fixing that lower end somewhere above 24,000 jobs. Thus, the Court finds that the Commissioner has failed to support the ALJ's step five finding with substantial evidence.

## CONCLUSION

For the reasons above, the Commissioner's Decision is **REVERSED** and **REMANDED** for further consideration as set forth in this order.

SO ORDERED on August 12, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT